**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VERNA M.,[1]

Plaintiff,

v. 1:25-cv-00576-KG-SCY

FRANK J. BISIGNANO, Commissioner
of the Social Security Administration,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]**

Before me is Plaintiff Verna M.'s ("Claimant") Motion to Reverse or Remand, filed November 26, 2025, in which Claimant appeals the denial of her claim for Disability Insurance Benefits and asks the Court to remand this matter to the Social Security Administration ("SSA") for further proceedings. Doc. 12; *see also* Doc. 18 (response); Doc. 19 (reply). Having reviewed the record and the relevant law, I recommend that the Court GRANT the Motion, reverse the Commissioner's decision denying benefits, and REMAND this matter to the Commissioner for further proceedings consistent with this opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] By an Order of Reference entered on September 18, 2026, United States Chief District Judge Kenneth J. Gonzales referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 22.

## APPLICABLE LAW

### 1. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the Administrative Law Judge ("ALJ") must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

**2. Standard of Review**

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214

(10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court

"should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## FACTUAL AND PROCEDURAL HISTORY

Claimant protectively filed a claim for disability insurance benefits on June 7, 2022. AR[4] 229-31, 232-38.[5] Claimant alleged a period of disability beginning on April 15, 2016, due to breast cancer, back pain, bone degenerative disease, arthritis, and poor vision. AR 60, 232-38. The Claimant's date of last insured was determined to be December 31, 2018. AR 20, 58, 312. The SSA denied Claimant's claim at the initial level on January 12, 2023, and at the reconsideration level on June 14, 2023. AR 59, 76. After the SSA denied Claimant's claim at the reconsideration level, Claimant requested a hearing, which ALJ Tresie Kinnell held on June 17, 2024. AR 30-58, 116. On July 31, 2024, the ALJ issued a decision finding that Claimant is not disabled under the relevant sections of the Social Security Act. AR 15-29. On May 2, 2025, the Appeals Council denied Claimant's request for review, which made the ALJ's decision the final decision of the Commissioner. AR 1-7, 16. Claimant now asks the Court to reverse the ALJ's decision and remand this matter to the Commissioner for further proceedings. Docs. 1, 12.

### 1. The ALJ Decision

After the hearing, the ALJ reviewed Claimant's claim pursuant to the five-step sequential evaluation process. AR 19-20. First, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of April 15, 2016. AR 20, 282-85. The ALJ found at

[4] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on August 13, 2025. Doc. 9.

[5] In addition, Claimant also filed an application for Supplemental Security Income Benefits, under Title XVI. AR 239-71. Claimant's application for SSI was denied on January 26, 2023, and she does not appeal the denial. AR 100-107.

step two that Claimant did not have a medically determinable impairment, through the date last insured of December 31, 2018. AR 20-22. The ALJ noted that the existence of a medically determinable impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings and cannot be established by symptoms alone. AR 21. The ALJ noted that the medical record included treatment between 1999 and 2010 but did not comment on that evidence further. AR 21. The ALJ found that the medical evidence from the period between the alleged onset date and the date last insured included only a March 6, 2017 emergency room visit, where Claimant was treated for an asthma flare up. AR 21. The ALJ noted that the record did show that Claimant reported experiencing back pain beginning in July 2019, but the ALJ did not otherwise comment on those medical records. AR 22. Finally, the ALJ summarized both Claimant's testimony at the hearing and the opinion evidence of state agency consultants who reviewed the medical record. AR 20-22. The ALJ concluded that the medical evidence did not establish a medically determinable impairment that existed prior to the date last insured; consequently, the ALJ concluded Claimant was not disabled. AR 22-23.

**2. Medical Evidence**

As the ALJ noted in her decision, the record contains very little medical evidence regarding Claimant's treatment between the alleged onset date and the date last insured. Instead, the medical evidence regarding Claimant's back pain consists of several records related to office visits between February 2000 and October 2002. In addition, the medical evidence regarding Claimant's wrist pain consists of several records related to office visits between February and June 2003. The record also contains evidence of treatment and diagnoses related to Claimant' back pain from September 2019 through February 2021, after the date last insured.

On February 4, 2000, Claimant was treated for low back pain. AR 1782. During the examination, Claimant told the physician that "she noticed that the low back pain [began] approximately two years ago" after pregnancy and after beginning her job as a dental hygienist. *Id.* Claimant state that the pain was "constant in nature" but "waxes and wanes" in intensity. *Id.* She stated that although a back brace helps, the pain was exacerbated by bending, especially when moving from a sitting to a standing position. *Id.* Imaging revealed no acute fractures, abnormalities, interspace narrowing, or osteophytes. AR 1783, 1785. The radiologist noted the impression of the lumbar spine was "normal." AR 1785. In addition, a lab panel to assess Claimant for arthritis was negative. AR 1781. At a follow up visit, three weeks later, the physician noted that Claimant's back pain was "much improved" after modifications at work to limit stress on her back. AR 1778. Medical records from late 2000 and early 2001 do not indicate Claimant reported back pain during pre-natal care. AR 1791-96, 1808-09.

In July 2002, Claimant again sought treatment for mid-lumbar back pain. AR 1817. The treatment notes reflect that Claimant reported the pain prevented her from bending over without discomfort, which made it difficult for her to work. AR 1817. The physician observed "tenderness" directly over the L1 through L3 region and paraspinal muscle spasm in that region as well. AR 1817. The physician also observed Claimant could bend only 15 degrees forwards and backwards. AR 1817. The physician diagnosed Claimant with a "lumbar strain" that was a "recurrence of a previous problem." AR 1817. The treating physician diagnosed Bextra, a NSAID, and directed Claimant to "limit lifting and strain to the area." AR 1817.

In October 2002, Claimant sought follow up treatment, reporting that her back pain felt like "cold shock waves in the right lower back area" that did not radiate to her lower extremities. AR 1815. The physician observed no significant numbness, tingling, or weakness, but the

examination of the back reveals "some point tenderness at the right paravertebral lumbar region. AR 1815. The physician again prescribed Bextra and a back brace for support, noting that it "will prevent her from getting more spasm" and "might help her prevent further injury, especially with the kind of work that she does." AR 1815-16. The physician diagnosed Claimant with a lumbar strain. AR 1815.

On February 11, 2003,[6] Claimant sought treatment for right wrist pain that began with her work as a dental hygienist. AR 1814. Claimant reported "significant throbbing sensation with pain at the right wrist" that she had experienced, though not to this degree, for approximately five years. AR 1814. The physician observed "slight weakness" in the right wrist with "opposition of the thumb versus the index, medial and fourth finger." AR 1814. The physician also noted "[p]ositive tenderness on tapping of the ventral wrist area." AR 1814. Based on the examination, the physician diagnosed Claimant with carpal tunnel syndrome and instructed her to wear a splint and take 600 mg of ibuprofen for 1-2 weeks. AR 1814.

A month later, on March 7, 2003, Claimant attended a follow-up visit and reported having tingling paresthesia in her right hand, intermittently, over the past four years. AR 1812. She reported recent volar midcarpal pain and weakness in her hand at the end of a workday. AR 1812. Claimant also reported that she experienced thenar pain when she used a volar wrist splint with a metal stay but that the pain abated when she removed the stay. AR 1812. Finally, Claimant reported that since the exacerbation of her wrist pain she had begun to experience shoulder pain. AR 1812. During examination, the physician observed "[p]ositive Tinel's sign over the ulnar nerve at the elbow reproducing [Claimant's] paresthesia symptoms." AR 1812. In addition, the

[6] Although the treatment notes indicate that the February 11 visit was a follow up, the record does not contain notes from an earlier visit. AR 1762-1825.

physician noted that "Phalen's test is also provocative of pain and paresthesia ulna digits of hand" and that there was "[t]enderness to percussion over median nerve at the wrist." AR 1812. "Butler's tests for median and ulnar neural tension" were positive but negative for radial neural tension. AR 1812. The physician diagnosed the pain as possibly "associated Guyon's canal/ulnar syndrome at wrist without demonstrable neurologic deficit" and "right scapular stabilizing dysfunction with muscular/postural shoulder pain." AR 1812. In creating a treatment plan, the physician noted that there was an "absence of signs of nerve impairment, as opposed to nerve irritation, [an] absence of specific signs of carpal tunnel syndrome" and recommended relative rest and reduced work duration (e.g., half days). AR 1812-13.

At a follow up visit on April 7, 2003, the physician noted "symptoms have largely abated" and the physical examination "confirms remarkable resolution of all of the previously noted positive findings." AR 1811. The physician noted that the assessments made in March were "clinically resolved" and created a plan to return Claimant to full day work. AR 1811. A final follow up visit, on June 9, 2003, indicated that after returning to a full work schedule in April, Claimant "remain[ed] asymptomatic" and that the conditions remained "clinically resolved." AR 1810.

The record also contains medical evidence regarding Claimant's back pain from the period after the date last insured. On September 3, 2019, approximately eight months after the date last insured, Claimant reported to her physician that she had chronic low back pain since she was a child, which had become worse in the past three years, causing her to stop running. AR 1103. During the appointment, Claimant reported a back injury from lifting a patient five years

earlier, just before she stopped working. AR 1103.[7] The physician noted tender lumbar paraspinal muscles with spasm, but no spine tenderness. AR 1104. In addition, the physician identified degenerative disc disease in the L3-L4 spine through the L5-S1 spine. AR 1106. During an October 10, 2019, physical therapy visit, a provider observed impairments in hip extensor, ABD, lumbar paraspinal pain, hip and abdominal piriformis pain, quad tightness, and pain associated with posterior to anterior mobilizations of the L3/L5 spine and sacrum. AR 1119. The treatment record reflects that Claimant's impairments created functional limitations in prolonged sitting, standing, walking, lifting, sleeping, travelling, and job or household duties. AR 1119.

In February 2021, radiology indicated that there was mild circumferential disc bulging and facet hypertrophy bilaterally in Claimant's L3-L4 spine, but also that the spinal canal and neural foramina were patent. AR 554. There were moderate to severe facet hypertrophy bilateral in the L4-L5 and L5-S1 spine. AR 555. In addition, in the L4-L5 spine, there was mild spinal canal stenosis and mild bilateral neural foraminal stenosis. AR 555. In the L5-S1 spine there was mold left and moderate right neural foraminal stenosis and the right foraminal disc bulge impinged on the exiting right L5 nerve root. AR 555. The physician diagnosed Claimant with "multilevel degenerative changes of the lumbar spine with associated spinal canal stenosis, neural foraminal stenosis, and nerve rood impingement." AR 555.

In addition, two state agency consultants offered opinion evidence regarding Claimant's impairments. AR 60-67; 77-82. At the initial determination level, Scott Spoor, M.D., opined that Claimant's osteoarthritis and unspecified arthropathies were severe impairments. AR 62. Dr. Spoor opined that Claimant had "a significant history of chronic back pain over a number of

[7] This report is consistent with Claimant's hearing testimony where she reported a similar injury. AR 40.

years" and that, although treatment improved her impairment, she had "fairly prompt recurrences of back pain." AR 65. However, Dr. Spoor limited his evaluation to the period from January 22, 2022, through the date of his opinion, noting that the "evidence prior to this time is insufficient." AR 64-66. Similarly, at the reconsideration level, Randal R. Reid, M.D., opined that Claimant's osteoarthritis and unspecified arthropathies were severe impairments. AR 79. Like Dr. Spoor, Dr. Reid opined that "there is no evidence" from the relevant time period regarding Claimant's medical impairments. AR 79.

## DISCUSSION

In her Motion, Claimant argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not consider all the medical evidence. Doc 12. Claimant first asserts that although the medical evidence showed she sought treatment for back pain in 2000-2002, the ALJ stated, inaccurately, that Claimant did not complain of back pain until July 2019. Doc. 12 at 11. In addition, Claimant asserts that the ALJ did not consider whether medical evidence from 2019-2022 that bears on her back pain relates back to the relevant period and, therefore, should have been considered by the ALJ at step two, where a claimant's burden is minimal. Doc. 12 at 12-13. Finally, Claimant asserts the ALJ discussed only her testimony regarding symptoms related to her carpal tunnel syndrome and not the medical evidence from prior to the alleged onset date. Doc. 12 at 13-14.

At step two, it is claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit his ability to do basic work activities.[8] *Langley*, 373 F.3d at

[8] A severe impairment significantly limits a person's physical or mental ability to perform "basic work activities":

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;

1118; 20 C.F.R. §§ 404.1523(a), 416.920. An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). Moreover, a claimant must show more than just the existence of condition or impairment. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(a), § 416.912(a). In addition, the impairment also "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Although a claimant has the burden at step two to establish an impairment or combination of impairments that significantly limits his ability to do basic work activities, the burden is nondemanding, and a claimant must make only a *de minimis* showing that he or she has a severe impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). "'Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quoting *Yuckert*, 482 U.S at 158) (O'Connor, J., concurring)). Thus, step two is designed "to weed out at an early stage of the administrative process those individuals

---

(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b)

who cannot possibly meet the statutory definition of disability." *Yuckert,* 482 U.S. at 156 (O'Connor, J., *concurring*) (*cited with approval in Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009)).

The Tenth Circuit has held that the regulations require an ALJ to "consider all evidence in [the] case record when [he or she] makes a determination or decision whether [claimant is] disabled." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (citing 20 C.F.R. §§ 404.1520(a)(3) & 416.920(a)(3)). In addition, the Tenth Circuit has rejected the argument that medical records prior to the alleged onset date are categorically irrelevant. *Hamlin,* 365 F.3d at 1223 n. 15; *see also Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005); *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (finding error where ALJ rejected physicians' opinions merely because they were from "the remote past"). Instead, medical records that predate alleged onset may provide indirect evidence of a claimant's condition during the period. *Masters v. Comm'r of Soc. Sec. Admin.*, No. CIV-21-293-KEW, 2023 WL 2733361, at *3 (E.D. Okla. Mar. 31, 2023); *Black v. Berryhill*, No. 17-CV-00153-JNP-EJF, 2018 WL 1472525, at *6-7 (D. Utah Mar. 7, 2018), *report and recommendation adopted*, No. 217CV00153JNPEJF, 2018 WL 1468573 (D. Utah Mar. 23, 2018); *Schoonmaker v. Berryhill*, No. CIV-16-1145-R, 2017 WL 4422597, at *4 (W.D. Okla. Oct. 5, 2017) (rejecting argument that where an ALJ ignored medical evidence predating the alleged onset date the error was harmless simply because the temporal aspect made the records of limited relevance); *Sill v. Barnhart*, No. 06-1031 MLB, 2006 WL 4046165, at *2 (D. Kan. Oct. 4, 2006). Further, an ALJ commits error if the ALJ fails to consider probative evidence of a Claimant's condition subsequent to the date last insured because such evidence may disclose the severity and continuity of impairments existing or which could reasonably be presumed to have been present during the relevant period. *Miller v. Chater*, 99

F.3d 972, 977 (10th Cir. 1996); *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

Thus, in a step two evaluation, medical evidence that predates an alleged onset date can be relevant to the question of whether a claimant had a medically determinable impairment during the relevant period. *See Weisblat-Dane v. Berryhill*, No. 17-CV-01440-LTB, 2018 WL 6616958, at *6 (D. Colo. Dec. 18, 2018) (finding that medical evidence from 11 years prior to the alleged onset date would be relevant to determine whether claimant's fibromyalgia was medically determinable); *Masters*, 2023 WL 2733361, at *3 (finding error when ALJ picked and chose from the evidence of Claimant's degenerative joint disease that pre-dated the alleged onset date, including failing to consider or explain why he rejected evidence from prior to the alleged onset date). Similarly, an ALJ should not end the five-step analysis at step two merely because the condition was not diagnosed until after the relevant period ended where the medical evidence shows a claimant experienced a chronic or progressive condition. *Turtle v. Astrue*, No. CIV-10-452-KEW, 2012 WL 984495, at *3 (E.D. Okla. Mar. 22, 2012). In this regard, the Tenth Circuit has recognized that a treating physician may provide a retrospective diagnosis of a claimant's condition, assessing whether a claimant was actually disabled prior to the expiration of insured status. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990); *Hanna v. Kijakazi*, No. 1:20-CV-00132-KRS, 2021 WL 3169203, at *9 (D.N.M. July 27, 2021); *Valois v. Saul*, No. 20-CV-0463-WJM, 2021 WL 527376, at *4 (D. Colo. Feb. 12, 2021). Where an alleged disability is non-traumatic in origin and medical evidence from the relevant period is sparse, an ALJ may call a medical advisor to determine a claimant's onset date and whether the condition, diagnosed later, existed during the relevant period. Soc. Sec. R. 18-01p, 2018 WL

4945639, at *6 (Oct. 2, 2018); *see also Turtle*, 2012 WL 984495, at *3 (citing Soc. Sec. R. 83-20)[9]; *Reid v. Chater*, 71 F.3d 372 (10th Cir. 1995).

The Commissioner urges the Court to disregard the medical evidence from 2000-2003 because the records are "from well over a decade before the relevant period began in April 2016 and over a decade before Claimant stopped working as a dental hygienist." Doc. 18 at 8. I agree that the temporal remoteness of medical records is a relevant consideration. This is especially true when the record contains evidence that a claimant's condition improved after those records were created and that the claimant was able to work for years after the records were created. However, as noted, the ALJ must consider all the evidence in the record to reach her decision, and evidence that pre-dates the alleged date of onset is not categorically irrelevant. *Carpenter*, 537 F.3d at 1266; *Hamlin,* 365 F.3d at 1223 n. 15; *cf. Webster v. Chater*, 96 F.3d 1454, 1996 WL 494315, at *2, (10th Cir. 1996) (finding no error where ALJ's opinion reflected that he considered medical evidence that predated plaintiff's alleged disability onset date); *Martinez v. Saul*, No. CV 19-489 GJF, 2020 WL 1308667, at *8 (D.N.M. Mar. 19, 2020) (same).

Although the ALJ acknowledges that the medical evidence includes treatment from 1999 to 2010, the ALJ does not describe that evidence. AR 21. More importantly, as Claimant notes, the ALJ later incorrectly states that Claimant did not complain of back pain until July 2019. AR 22. The medical evidence shows instead that Claimant received treatment for back pain between 2000 and 2003. AR 1778-85, 1815-17; Doc. 18 at 8 (acknowledging treatment for back pain from 2000 through 2003). At that time, Claimant's physician advised her to make modifications

[9] Soc. Sec. R. 18-01p rescinded Soc. Sec. R. 83-20, on which *Turtle*, relies. Although Soc. Sec. R. 18-01p does not require an ALJ to call on the services of a medical examiner where there is a need to infer the date of onset as Soc. Sec R. 83-20 does, Soc. Sec. R. 18-01 gives an ALJ discretion to call on the services of a medical examiner where the ALJ needs to infer the onset date. Soc. Sec. R. 18-01p, 2018 WL 4945639, at *6 (Oct. 2, 2018).

for her work to limit stress on her back, even though radiology suggested that her lumbar spine was "normal." AR 1778-85. When Claimant's back pain resurfaced in 2002 her physician observed tenderness and muscles spasm in her lumbar spine and a limited ability to bend forwards and backwards. AR 1817. The physician noted the lumbar strain was a "recurrence of a previous problem" and again directed Claimant to limit lifting and strain to her back. AR 1817. In addition, the physician prescribed the use of a back brace. AR 1815-16. Although the record indicates that Claimant's back pain then improved for some time, Claimant testified that she had recurring issues with back pain during her employment as a dental hygienist. For instance, she testified that she "hurt her back really bad picking up a quadriplegic patient" around 2004 or 2005, requiring her to take worker's compensation. AR 40, 47.

In addition to evidence of back issues that existed before her alleged date of onset, Claimant also argues the ALJ erred in failing to consider 2019 and 2021 records documenting her back problems. Doc. 12 at 13. In response, the Commissioner points out that the ALJ recognized these records but, because they post-dated Claimant's date last insured, did not consider them. Doc. 18 at 9. As noted above, however, when records created after a claimant's date of last insured might shed light on a claimant's condition at the time she was insured, such records are relevant.

These records reflect that, in September 2019, a physician diagnosed Claimant with degenerative disc disease and degenerative joint disease in her lumbar spine and sacroiliac joints. AR 1103-1106, 1124. Treatment notes show that the impairments created functional limitations in prolonged sitting, standing, walking, lifting, sleeping, travelling, and job or household duties. AR 1119. Moreover, the treatment notes reflect that Claimant stated the pain had been chronic

since childhood, that she had suffered a back injury five years earlier[10] when she was lifting a patient, and that this pain began to worsen three years earlier, which was consistent with Claimant's testimony at the administrative hearing. AR 1103. Three years before 2019 includes the relevant period—after Claimant's disability onset date and before her date last insured. Further, medical records in 2019 show *degenerative* disc and joint disease in her back, AR 1106. Thus, records from 2019, not long after her December 31, 2018, date of last insured, indicate that her back pain began before 2019.

Further, an MRI of Claimant's lumber spine in 2021 revealed significant arthritis. AR 554-55. At this time, a physician diagnosed Claimant with "multilevel degenerative changes of the lumbar spine with associated spinal canal stenosis, neural foraminal stenosis, and nerve rood impingement." AR 555. Although Claimant's treating physicians did not state an opinion as to whether Claimant was disabled prior to the expiration of her insured status, the medical evidence relates back to the insured period as the treatment notes discuss a chronic, degenerative condition that was exacerbated by lifting a patient years earlier. AR 555, 1103. Further, a state agency physician also opined Claimant's back pain was chronic in nature, stating that Claimant had "a significant history of chronic back pain over a number of years." AR 65.

Thus, the medical records indicate that symptoms attributable to back pain were present prior to the date Claimant was last insured and that Claimant was diagnosed with a degenerative back disease within a year after the date last insured. These records show that Claimant's impairments were both intermittent, chronic, and progressive, worsening over time and that

[10] The record is not clear as to whether Claimant injured her back lifting a patient on two separate occasions or whether the one occasion on which she injured her back has been reported as having occurred at two different times. Regardless, Claimant has repeatedly reported, including during medical treatment, that she injured her back lifting a patient on the records are clear that this happened before 2016, the year of her disability onset.

physicians prescribed work-related accommodations in response to symptoms they observed. Had the ALJ considered these records, she might have decided at step two of the sequential evaluation process that those records indicate Claimant's symptoms were "severe" (such that they significantly limited Claimant ability to do basic work activities) between her disability onset date and her date last insured. *See* 20 C.F.R. § 404.1521(b) (describing ALJ's inquiry).

That the ALJ did not consider all the evidence in the present case distinguishes this case from *Webster* and *Martinez*, where the ALJ acknowledged and then discounted evidence from outside the relevant period. *Webster*, 96 F.3d 1454, 1996 WL 494315, at *2; *Martinez*, 2020 WL 1308667, at *8. Here, the ALJ's focused entirely on the *absence* of evidence from the short period between Claimant's alleged disability onset date and Claimant's date of last insured. AR 21-22. In not considering whether the complete medical record was sufficient to establish the existence of a severe impairment between Claimant's alleged disability onset date and date last insured, the ALJ committed error. *See Hamlin,* 365 F.3d at 1223 n. 15; *Lackey*, 127 F. App'x at 458; *Miller*, 99 F.3d at 977; *Baca*, 5 F.3d at 479; *Masters*, 2023 WL 2733361, at *3 (collecting cases).

Notably, however, the conclusion that the ALJ erred in not considering all of the evidence is different from a conclusion that Claimant had a severe impairment during the relevant period or that the ALJ ultimately should have found Claimant to be disabled. After all, the record also indicates Claimant was able to run marathons up until 2016 or later. AR 1103 (medical record in which Claimant reported in September 2019 that her back pain had worsened in the last three years, preventing her from running marathons). Indeed, after considering evidence of Claimant's back pain that preexisted her disability onset date and after considering evidence from after Claimant's date of last insured that documented and/or corroborated the existence of back pain

that preexisted the date of last insured, an ALJ might appropriately conclude that Claimant failed to meet her burden at step two. But such a determination cannot be made without considering the evidence.

Further, it is the ALJ, and not the Court, who must conduct such an analysis. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). An ALJ's decision should be evaluated based solely on the reasons stated in the decision. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. *Grogan,* 399 F.3d at 1263. A court that considers legal or evidentiary matters not considered by the ALJ risks violating the general rule against post hoc justification of administrative action. *Allen,* 357 F.3d at 1145. A court may not properly weigh the evidence in the first instance. *Id.* at 1142. Therefore, I recommend the Court remand the case for the ALJ to consider all the evidence contained in the record and determine whether it is sufficient to establish (or to consult a medical advisor) that Claimant's impairments, diagnosed later, existed during the relevant period.

**CONCLUSION**

A Claimant's burden at step two is nondemanding. *Hawkins*, 113 F.3d at 1169. To determine whether a Claimant has met that burden, an ALJ must consider all of the evidence. Because the records demonstrate the ALJ did not do so here, I recommend the Court GRANT Claimant's motion, reverse the Commissioner's decision denying benefits, and REMAND this matter to the Commissioner for further proceedings consistent with this opinion. Because I find that remand is necessary given that at step two the ALJ did not fully consider evidence of

Claimant's back pain, I do not address Claimant's arguments related to wrist pain and carpel tunnel syndrome.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**